479 So.2d 767 (1985)
SECURITY FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,
v.
Glenda W. JARCHIN, Appellee.
No. 84-235.
District Court of Appeal of Florida, Fifth District.
October 31, 1985.
G. Larry Sims of Black, Crotty, Sims, Hubka, Burnett and Samuels, Daytona Beach, for appellant.
Donald E. Hawkins of Hawkins & Hawkins, Daytona Beach, for appellee.
COBB, Chief Judge.
In this case the mortgagee, Security First Federal Savings & Loan Assn. (Security), attempted to accelerate a mortgage executed in 1968 based on paragraph 14 thereof, which reads:
If a conveyance should be made by the mortgagor of the premises herein described, or of any part thereof, without the written consent of said mortgagee and without the assumption in regular form of law by the grantee of the obligation to the said mortgage created by *768 said promissory note in this mortgage and by whatever agreement for additional advances there may be, then in that event it shall be optional with said mortgagee to declare any said sums of money secured hereby immediately and concurrently with such conveyance due and payable in default, waiver of all notices as required by law hereby expressly made by said mortgagor. (Emphasis added.)
On July 30, 1982, the mortgagor, Glenda Jarchin, entered into a contract for sale and purchase of the encumbered property with Mr. and Mrs. Gormley, who agreed to assume the mortgage at existing rates. When the Gormleys attempted to assume the mortgage, however, Security told them it was assumable only at a new, accelerated interest rate unilaterally established by Security. The purchasers refused to close under the terms and conditions dictated by Security. Jarchin conveyed the property on October 28, 1982, by giving a "purchase money wrap-around mortgage" in which she became the mortgagee and the purchasers became the mortgagors under the same terms and conditions as provided for in the contract for sale and purchase, and the same terms and conditions which would have been given by Security had the assumption been granted in accordance with the original terms of the mortgage.
At all times subsequent to the closing between Jarchin and the Gormleys, Jarchin has fully complied with the terms and conditions of the promissory note and mortgage outstanding in favor of Security, and there has been no impairment of the security of the mortgage in question. On December 1, 1982, Security sent notice to Jarchin of an alleged breach. Jarchin then filed a three-count complaint seeking (1) a declaratory judgment; (2) damages for Security's breach of the mortgage agreement; and (3) injunctive relief to prevent Security from acceleration and foreclosure. Security filed a counterclaim for foreclosure of the mortgage.
Subsequently, the trial court entered a partial summary judgment for Jarchin finding, inter alia:
The mortgage in question contains a dual requirement that a conveyance must be both without the written consent of the mortgage holder and without assumption in the regular form of law before its due on sale clause applies. This wording has been previously considered in Home Federal Saving & Loan Assn. of Palm Beach v. English, 249 So.2d 707 (Fla. 4th DCA 1971), and as such this Court finds that the mortgage in question is not controlled by the Garn St. Germain Depository Institution's Act... .
Accordingly, the Court finds that the defendant, Security First Federal Savings & Loan Association, unreasonably withheld its consent to the loan assumption in question. Furthermore, the defendant Security may not in such circumstances charge an additional rate beyond that which was contractually agreed between the parties in the mortgage document, and the defendant Security is ordered to accept payment as properly tendered in accordance with the mortgage document entered between the parties.
The counterclaim for foreclosure of mortgage brought by the defendant, Security First Federal Savings & Loan Association against the plaintiff is dismissed. All remaining issues are reserved until further hearing.
Security appeals entry of the partial judgment. Since the trial court's order granted injunctive relief and determined the issue of liability in favor of Jarchin, who was seeking affirmative relief, we have jurisdiction pursuant to Florida Rules of Appellate Procedure 9.130(a)(3)(B) and (C)(iv).
It is clear under the recent Florida Supreme Court case of Weiman v. McHaffie, 470 So.2d 682 (Fla. 1985), and the Garn-St. Germain Act, that a lender, at its option, may strictly enforce a "due-on-sale" clause in a mortgage irrespective of any consideration of the impairment of the security occasioned by the sale. But that is *769 not the issue here. Both section 1701j-3(b)(2) of the Garn Act and Federal Regulation 12 C.F.R., section 545.8-3(f) (1982), specifically recognize that the rights and remedies of both parties are fixed and governed by the mortgage contract. Any law attempting to impair an existing contract would be patently unconstitutional. See Article I, Section 10, United States Constitution. It was noted by the United States Supreme Court in Fidelity Federal Savings & Loan Assn. v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982):
Moreover, in our view, the second sentence of section 545.8-3(f) simply makes clear that the regulation does not empower federal savings and loans to accelerate a loan upon transfer of the security property unless the parties to the particular loan instrument, as a matter of contract, have given the lender that right. Similarly, if the parties to a given contract agree somehow to limit the association's right to exercise a due-on-sale provision, the second sentence of section 545.8-3(f) precludes the lender from relying on the first sentence as authorizing more expansive use of the clause.
458 U.S. at 157-58, 102 S.Ct. at 3024-25.
We agree with the trial court's determination that Security's right to accelerate based on the due-on-sale provision in paragraph 14 arises only if the conveyance is without the written consent of the mortgage holder and without assumption in regular form of law. Security could not at its option accelerate the debt until the two conditions had been fulfilled, and the second was not  due to the good faith attempt by the Gormleys, frustrated by Security, to assume the mortgage in regular form of law. Security's argument would be valid only if the conjunctive "and" in paragraph 14 is read as the disjunctive "or."
The trial court relied on Home Federal Savings & Loan Assn. of Palm Beach v. English, 249 So.2d 707 (Fla. 4th DCA 1971), wherein Home Federal claimed the right to accelerate the debt and foreclose on the mortgaged real property for the alleged failure of a subsequent purchaser of the real property to obtain its written consent to assume the mortgage. The mortgage in question in English contained a clause which stated:
If a conveyance should be made by the Mortgagor of the premises herein described, or any part thereof, without the written consent of the Mortgagee, and without assumption in regular form of law by the grantee of the obligation to the Mortgagee created by said promissory note and this mortgage, then, and in that event, and at the option of the Mortgagee, and without notice, all sums of money secured hereby shall immediately and concurrently with such conveyance become due and payable and in default.
Id. at 708. Although the subsequent purchasers had assumed the mortgage in regular form of law, Home Federal argued that the clause required its written consent before a subsequent purchaser could assume the mortgage. The appellate court held that the clause had dual elements and that both must be present to create the right of acceleration or foreclosure. Thus, the appellate court held that the trial judge had properly dismissed the complaint.
The appellant herein rejects English and relies on the case of First Federal Savings & Loan Assn. of Winter Haven v. Quigley, 445 So.2d 1052 (Fla. 2d DCA), review denied, 453 So.2d 45 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). The mortgage clause involved in Quigley stated:
No conveyance of said property, or any part thereof, shall be made by Mortgagor without the written consent of Mortgagee and without assumption by the grantee in the form prescribed by Mortgagee of the obligation to Mortgagee hereunder. In any event Mortgagee may, upon such conveyance by Mortgagor, deal directly with Mortgagor's grantee without any notice to Mortgagor in all respects pertaining to this mortgage, and may forebear to sue or may extend times for payment of the debt secured hereby without discharging or in *770 any way affecting the liability of Mortgagor hereunder.
Id. at 1052.
As we read the pertinent mortgage language in Quigley, the mortgagors were prohibited from conveyance without doing two things: (1) obtaining the written consent of the mortgagee, and (2) obtaining an assumption by the grantee in the form prescribed by the mortgagee. If the mortgagors conveyed and failed to satisfy both requirements, they would have breached the contract and would be subject to acceleration. In addition, the Quigley mortgage contained a clause which allowed the mortgagee to accelerate the mortgage unless "each condition and stipulation of (the) mortgagee" was duly performed. Based on this language, the Second District reversed a summary judgment for Quigley, the prospective purchaser, who had filed a declaratory judgment action.
In English, the contractual language at issue was different. The language in the English mortgage gives to the mortgagee the right to accelerate only where the mortgagor conveys without written consent and without assumption of the mortgage in regular form of law by the mortgagor's grantee. In other words, under the wording in English, two conditions must be breached by the mortgagor before the mortgagee may accelerate.
Despite the similarity of the language in the acceleration clauses in Quigley and English, the former prohibits the mortgagor from two courses (the breach of either giving rise to acceleration) and the latter requires that two factors concur before the mortgagee may accelerate. As pointed out by the opinion in English:
The point presented by the appellant [mortgagee] assumes that the appellant's mortgage permits a foreclosure when the mortgagor (or a subsequent grantee) sells the mortgaged property without the consent of the appellant-mortgagee. This assumption is not supported by the terms of the mortgage which is incorporated in the complaint. Paragraph 9 of the mortgage is a condition the occurrence of which gives the mortgagee a right to accelerate the debt secured by the mortgage and to foreclose the mortgage. The condition, however, has dual elements, and both must be present to create the right of acceleration and foreclosure. For the condition to occur it is necessary under the clear language of paragraph 9 that a conveyance of the mortgaged property be made by the mortgagor (or a subsequent grantee) without the written consent of the appellant and that such conveyance be made without a valid assumption by the grantee of the obligation of the mortgage and the promissory note thereby secured. Until both these events concur, the condition has not occurred. (Emphasis in original.)
249 So.2d at 709.
English and Quigley are not in conflict. The language contained in the mortgage in the instant case is analogous to that in English, not in Quigley. Insofar as the language may be deemed ambiguous, Florida law is clear that any ambiguity in contractual language will be interpreted against the party who selected that language, and this principle of law is applicable to mortgages. Consolidated Development & Engineering Corp. v. Ortega Co., 117 Fla. 438, 158 So. 94 (1934); Rose v. Lurton Co., 111 Fla. 424, 149 So. 557 (1933). The disputed language in the instant case, of course, was drafted by Security. A party is bound by the language it adopts in an agreement, no matter how disadvantageous that language later proves to be. See Carnell v. Carnell, 398 So.2d 503 (Fla. 5th DCA), review denied, 407 So.2d 1102 (Fla. 1981).
In Morse v. City Federal Savings & Loan Assn., 567 F. Supp. 699 (D.Fla. 1983), the mortgagor's grantee had entered into a contract to sell the mortgaged property to a third party. The terms of the sale contract provided the buyers would assume the existing mortgage. The mortgage contained the following clause:
16. That, if a conveyance should be made by the mortgagor of the property *771 hereby secured, or any part thereof, without the written consent of the Association, and without assumption in regular form of law by the grantee of the obligations to the Association created by said promissory note and this mortgage, then, and in that event, and at the option of the Association, and without notice, all sums of money secured hereby shall immediately and concurrently with such conveyance become due and payable and in default. The Association may deal with successors in interest with reference to this mortgage and the debt hereby secured in the same manner as with the mortgagor, and may forbear to sue or may extend time for payment of the debt, secured hereby, or otherwise act without discharging or in any way affecting the liability of the mortgagor hereunder or upon the debt hereby secured. (Emphasis in original.)
Id. at 701. The court found that the parties had limited the mortgagee's right to exercise the due-on-sale clause by the terms of the mortgage agreement drafted by the mortgagee. The court noted:
That a federal savings and loan may exercise a contractual right to accelerate notwithstanding any state law to the contrary is beyond debate. de la Cuesta, supra. In order to do so, however, the lender must first have obtained such a contractual right.
Id. at 702.
After consideration of English, supra, the court stated that under the terms of the mortgage before it, the purchaser must breach both conditions before the lender's option to accelerate could be triggered  the vendee must fail to get permission and fail to validly assume. The court stated:
... The conditions precedent are neither mandated by state law nor conflicting with the federal regulation. Rather, this type of private contractual limitation is referred to and expressly sanctioned by the federal regulation.
In short, this order is not in derogation of de la Cuesta, supra. In fact, this court was ruling in favor of federal savings and loan associations on due-on-sale questions for over a year prior to the de la Cuesta decision. However, the savings and loan association which drafted the original language of the mortgage does have the right under the regulation to include "as a matter of contract between it and the borrower", a provision permitting the association to accelerate the balance if any portion of the real property securing the loan is transferred by the borrower without prior written consent of the association. However, the language of this loan instrument simply does not give the defendant this right, and it is bound by the terms of its contract. (Emphasis added.)
Id. at 703. The court held that Home Federal could not accelerate the debt nor adjust the mortgage interest rate as to the purchaser who would assume the mortgage.
Security argues that the interpretation given the mortgage clause by both English and Morse conflicts with the clear intent of the Garn Act and the Federal Home Loan Bank Board's regulation. We disagree. Both the Garn Act and section 545.8-3(f) allow the parties to a given contract to agree to limit the lender's right to accelerate. In the instant case, such a limitation by contract occurred.
AFFIRMED.
COWART, J., concurs.
UPCHURCH, J., dissents with opinion.
UPCHURCH, Judge, dissenting with opinion.
I must respectfully dissent from the interpretation of the acceleration clause by the majority.
As explained in the opinion, a lender has a clear legal right to enforce a "due-on-sale" clause. Here, Security could exercise its "due-on-sale" clause if the mortgagor conveyed without: 1) the written consent of Security and 2) the assumption in regular form of law. The requirements of a written consent and an assumption in regular form of law were imposed upon the mortgagor to enable her to convey without *772 triggering Security's option to accelerate. If both requirements applicable to the manner of conveyance are met, the mortgagor can be assured that the mortgagee will not be able to declare the mortgage in default, but if the mortgagor fails to comply with both requirements, the mortgagee is able to accelerate.
If we examine the effect of the majority's holding, only when neither condition was met, i.e., no assumption in regular form and no written consent, could the bank accelerate. If a mortgagor is careful not to have his buyer assume the mortgage, then, according to the majority, the bank cannot accelerate. Or, if the mortgagor does not bother to get the bank's consent, then, says the majority, the bank cannot accelerate. Since both of these conditions are within the control of the mortgagor, he can completely control the bank's option to accelerate by the simple expedient of complying with one but not the other condition. As construed by the majority, the clause then becomes devoid of meaning, serves no purpose and is a nullity. If a contract is susceptible of two constructions, one reasonable and one which makes the agreement completely meaningless, as the majority does here, the reasonable construction is to be preferred. See Baker & Co. v. Goding, 317 So.2d 118 (Fla. 3d DCA 1975). We should reverse.