ON MOTION FOR REHEARING OR CLARIFICATION

BERGER, J.
We grant Appellee’s motion for clarification, withdraw our previous opinion, and substitute the following in its place.
Appellant, Douglas H. Doty, timely appeals the summary final judgment entered in favor of Appellee, Grant Bryson, on Doty’s claim for breach of a promissory note. Doty argues that the trial court erred in finding the relevant promissory note, identified as Promissory Note “C,” ambiguous as to whether Bryson’s conveyance of 35% of. the outstanding stock in three companies extinguished Promissory Note “C.” We agree and reverse.
Bryson paid $2,000,000.00 for 50% of the outstanding stock in three companies.[1] He put $1,000,000.00 down towards the purchase of the stock and executed three separate promissory notes with respect to the remaining $1,000,000.00: Promissory Note “C” in the amount of $500,000.00, minus certain credits;[2] Promissory Note “D” in the amount of $250,000.00; and Promissory Note “E” in the amount of $250,000.00. Note “C” was the primary obligation intended to be paid first. In the event of a default on Note “C,” paragraph 6 of the “Payment Schedule” in the Note requires Bryson to transfer back to Doty 35% of the stock he acquired. Specifically, paragraph 6 provides:
In the event that all principal and interest due to Lender under the terms of this Promissory Note is not paid in full on or before September 21, 2008, such shall constitute an event of default and Borrower shall immediately convey twelve point five percent (12.5%) of the outstanding stock of Cool Space of Florida, Inc., Nature Coast Marine Sales, Inc., and Gulf to Lake Sales, Inc., to Lender without further action necessary by Lender. Should Borrower fail to so convey said stock to Lender, such stock shall automatically be transferred to Lender without any further action required of Lender. Subsequent to September 21, 2008, Borrower shall have an additional One Hundred Eighty (180) days in which to pay all principal and accrued interest due under this Promissory Note to Lender. Should Borrower fail to pay to Lender all principal and accrued interest due under this Promissory Note to Lender within 180 days after September 21, 2008, Borrower shall immediately convey to Lender an additional Twenty-Two Point Five per cent (22.50%) of the outstanding issued stock of Cool Space of Florida, Inc., Nature Coast Marine Sales, Inc., and Gulf to Lake Sales, Inc. to Lender without any further action necessary by Lender. Should Borrower fail to convey said stock to Lender, then such stock shall automatically transfer to Lender without any further action required of Lender.
In addition, should Borrower fail to pay all principal and interest due to Lender pursuant to the terms of this Promissory Note on or before the expiration of one *459 hundred eighty days (180) subsequent to September 21, 2008, Borrower shall forfeit credit for any and all payments made by Borrower to Lender or made to Lender by any person, firm, trust or corporation pursuant to the terms of any other promissory note given by Borrower to Lender. Thereafter, upon Borrowers conveyance of stock to Lender as set forth in this Section, those certain Promissory Notes given to Lender of even date herewith in the amount of $250,000.00 each shall be extinguished.
It is undisputed that Bryson defaulted on Note “C” and did not cure the default within the 180 day time period. It is also undisputed that Notes “D” and “E” would be extinguished upon transfer of the 35% share of stock back to Doty. At issue in this appeal is whether the stock transfer contained within paragraph 6 also extinguished Note “C.”
Doty contends that Promissory Note “C” is clear and unambiguous, and. that the language of Promissory Note “C” does not imply that the transfer of the stock extinguishes Promissory Note “C.” Bry-son counters that Promissory Note “C” is ambiguous because the language in paragraph 6 of the “Payment Schedule” provision “somewhat” conflicts with the language in paragraph 2 of the “Default and Remedies” provision.
Paragraph 2 of the Default and Remedies provision states:
Upon the occurrence of an Event of Default and at any time thereafter while an Event of Default shall be continuing, Lender shall have the right, exercisable at Lender’s discretion, to declare the entire unpaid principal amount of this Note, and all accrued interest on this Note, immediately due and payable without notice to Borrower. Borrower expressly waives notice of the exercise of such right.
“Whether an ambiguity in a written agreement exists is a question of law which appellate courts review pursuant to the de novo standard of review.” Lab. Corp. of Am. v. McKown, 829 So.2d 311, 313 (Fla. 5th DCA 2002). “ ‘In determining whether the trial judge has erred as a matter of law in his construction of the contract, we must be guided first by the language of the contract itself and where the contract is clear and unambiguous there is no reason to go further.’” Id. (quoting Automatic Canteen Co. of Am. v. Butler, 177 So.2d 712, 715 (Fla. 3d DCA 1965)).
Here, the trial court found paragraph 6 of Note “C” ambiguous, stating:
1. Although Note “C” is clear that Notes “D” and “E” were extinguished by the stock transfer, it is ambiguous as to whether Note “C” is extinguished.
2. Here, the Defendant paid $1,000,000.00 up front, conveyed a 35% stock share valued at $1.4 million upon default on Note “C”, and forfeited any money he had paid towards all Notes prior to the default. Giving meaning to the whole agreement and fairly considering all its parts, the language of paragraph 6 “implies” that the stock transfer is the agreed upon remedy for a default of Note “C” that extinguishes it, and in addition, extinguishes Notes “D” and “E”. Any further judgment of $478,570.00 against the Defendant for breach of promissory Note “C” would be unfair and yield an unwarranted windfall in favor of the Plaintiff.
3. Accordingly, this Court is constrained to strictly construe the contract ambiguity against the drafter and find that Note “C” was extinguished upon transfer of the 35% stock share after default....
*460 The trial court, however, failed to identify any words or phrases within paragraph 6 that it considered ambiguous. Instead, it concluded that “[g]iving meaning to the whole agreement and fairly considering all its parts, the language of paragraph 6 ‘implies’ that the stock transfer is the agreed upon remedy for a default of Note “C” that extinguishes it, and in addition, extinguishes Notes ‘D’ and ‘E.’ ” (emphasis added). We find this to be a strained interpretation of the plain language in the contract. For having reviewed the entire agreement ourselves, we can find no language expressly providing or otherwise implying that Note “C” is extinguished by the stock transfer outlined in paragraph 6. Quite the contrary, the plain language of paragraph 6 states that upon transfer of the stock, “those certain Promissory Notes given to Lender of even date herewith in the amount of $250,000.00 each shall be extinguished.” The only notes with a value of $250,000.00 are Notes “D” and “E.” In fact, the following language provided in Notes “D” and “E” confirms that only Notes “D” and “E” are to be extinguished by the stock transfer:
[I]n the event of a Default under that certain Promissory Note given by Borrower to Lender of even date herewith identified as Note “C”, a copy of which is attached hereto and the terms of which are incorporated herein, should such Default continue after 30 months from the date of such Note and provided only if Borrower complies with the terms of said Promissory Note “C” by conveying to Lender stock of Gulf to Lake Sales, Inc., Nature Coast Marine Sales, Inc., and Cool Space of Florida, Inc. without further action on the part of the Lender, then this Promissory Note shall be extinguished.
Because the plain language of paragraph 6 of Note “C” is clear and unambiguous, we need not look beyond it to discern the intent of the parties. See NCP Lake Power, Inc. v. Florida Power Corp., 781 So.2d 531, 536 (Fla. 5th DCA 2001) (“As a general rule when the terms and provisions of a contract are unambiguous and complete, parol evidence is not admissible to define or explain them.”). While we are sympathetic to the trial court’s concern that a judgment on Note “C” may be unfair, “[a] party is bound by the language it adopts in an agreement, no matter how disadvantageous that language later proves to be.” Sec. First Fed. Sav. & Loan Ass’n v. Jarchin, 479 So.2d 767, 770 (Fla. 5th DCA 1985); see also Kel Homes, LLC v. Burris, 933 So.2d 699, 704 (Fla. 2d DCA 2006) (“[Pjarties may enter into any contract they desire, and they are bound by the language of that contract.... This is true no matter how disadvantageous that language later proves to be for one party or the other.” (citations omitted)). To the extent that the trial court considered extrinsic evidence to discern the intent of the parties, it erred in doing so.
Because the only issue in this appeal involves the interpretation of Note “C,” and because we find the plain language of paragraph 6 of Note “C” to be clear and unambiguous, we reverse the summary final judgment entered in favor of Bryson and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
LAWSON, J. and MURPHY, M„ Associate Judge, concur.

. Cool Space of Florida, Inc., Nature Coast Marine Sales, Inc., and Gulf to Lake Sales, Inc.

. After applying credits, the principle sum due on Note “C” was $478,570.00.