470 So.2d 682 (1985)
Emil J. WEIMAN and Joyce E. Weiman, His Wife, Petitioners,
v.
Thomas N. McHAFFIE and Jacqueline M. McHaffie, His Wife, Respondents.
No. 65344.
Supreme Court of Florida.
May 2, 1985.
Rehearing Denied June 28, 1985.
Ray D. Helpling of Scruggs and Carmichael, Gainesville, and Kathleen E. Gainsley of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes and Mitchell, Pensacola, for petitioners.
H. Reynolds Sampson, Tallahassee, for respondents.
Hume F. Coleman of Holland and Knight, Tallahassee, and Maud Mater, Sr. Vice President and Gen. Counsel and Garrett C. Burke, Associate Gen. Counsel, Washington, D.C., amicus curiae for Federal Home Loan Mortg. Corp.
Nancy E. Swerdlow and Vance E. Salter of Steel, Hector and Davis, Miami, amici curiae for Mortg. Bankers Ass'n of Fla. and Federal Nat. Mortg. Ass'n.
John F. Corrigan of Ulmer, Murchison, Ashby, Taylor and Corrigan, Jacksonville, and James T. Crowley, Mark F. Kennedy and Jeffery A. Key of Thompson, Hine and Flory, Cleveland, Ohio, amicus curiae for Developers Diversified, Ltd.
McDONALD, Justice.
We review Weiman v. McHaffie, 448 So.2d 1127 (Fla. 1st DCA 1984), because the district court of appeal certified the following question of great public importance:
IS A DUE-ON-SALE CLAUSE IN A FLORIDA MORTGAGE EXECUTED ON SEPTEMBER 8, 1980, TO A PRIVATE LENDER OR SELLER, ENFORCEABLE AS TO AN ATTEMPTED TRANSFER OCCURRING SUBSEQUENT TO OCTOBER 15, 1982, BUT BEFORE OCTOBER 15, 1985, WITHOUT A SHOWING THAT THE MORTGAGEE'S SECURITY WILL BE IMPAIRED BY THE TRANSFER?
*683 Id. at 1129. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and approve in part and quash in part the decision under review.
On September 8, 1980 the McHaffies purchased a home from the Weimans, who took back a purchase money mortgage containing a due-on-sale clause. The McHaffies later attempted to sell the property when a job change forced them to leave the area. After the Weimans repeatedly refused permission for sale of the property subject to the mortgage, the McHaffies sought a declaratory judgment on the enforceability of the due-on-sale clause. The Weimans argued that the due-on-sale clause was enforceable because the Garn-St. Germain Depository Institutions Act, Pub.L. No. 97-320, preempted any existing Florida case law to the contrary. The trial court entered a declaratory judgment for the McHaffies. The district court affirmed the nonenforceability finding, in part, but on different grounds from those articulated by the trial court.
Congress enacted Garn-St. Germain to give all lenders the same due-on-sale clause enforcement power as follows:
(1) Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.
12 U.S.C. § 1701j-3(b) (1982). Garn-St. Germain provides a "window period" in 12 U.S.C. § 1701j-3(c) (1982) so that some states could postpone federal preemption of state law restrictions on the enforcement of due-on-sale clauses until October 15, 1985. "Window period" eligibility begins
on the date a State adopted a constitutional provision or statute prohibiting the exercise of due-on-sale clauses, or the date on which the highest court of such State has rendered a decision (or if the highest court has not so decided, the date on which the next highest appellate court has rendered a decision resulting in a final judgment if such decision applies State-wide) prohibiting such exercise.
Id. This "window period" eligibility closed on October 15, 1982, the effective date of Garn-St. Germain. After that date, a state without "window period" status has no right to impose any restrictions on due-on-sale clause enforcement beyond those enumerated in 12 U.S.C. § 1701j-3(d) (1982).
When this mortgage was executed in 1980, Florida case law required that a lender show an impairment of security before enforcing a due-on-sale clause. First Federal Savings & Loan Association v. Lockwood, 385 So.2d 156 (Fla. 2d DCA 1980); Clark v. Lachenmeier, 237 So.2d 583 (Fla. 2d DCA 1970).[*] Disagreeing with the congressional conference report, the district court found that these decisions made Florida a "window period" state under Garn-St. Germain. Therefore, the court concluded that the federal preemption of state restrictions on the enforcement of due-on-sale clauses by institutional and private lenders will not take effect in Florida until three years after the October 15, 1982 effective date of Garn-St. Germain. The district court remanded for the trial court to determine whether a proposed sale would impair the Weimans' security.
The Weimans and amici curiae contend that the district court erred in finding Florida to be a "window period" state as defined in Garn-St. Germain. They also argue that we should disapprove on public policy grounds those district court decisions requiring a lender to show impairment of security before a due-on-sale clause may be enforced. We disagree with the first point, but agree with the second.
*684 Language in the Garn-St. Germain congressional conference report indicated that Florida would not be a "window period" state because the district court decisions on this issue did not have statewide application. We respect the authority of legislative history in interpreting statutory language. We must, however, reject the conference report's view on the effect of a district court decision on a point of law which stands without a conflicting decision from another district court or from this Court.
The parties entered into this mortgage in 1980. At that time Florida case law required that a lender show impairment of security before foreclosure under a due-on-sale clause would be permitted. Lockwood; Clark. No conflicting district court decisions existed on this point of law. This Court had no jurisdiction to review Lockwood without decisional conflict or some other constitutional basis for review. District court decisions "represent the law of Florida unless and until they are overruled by this Court." Stanfill v. State, 384 So.2d 141, 143 (Fla. 1980). Lockwood's restriction of due-on-sale clause enforcement had a binding effect on all Florida trial courts and a persuasive effect on sister district courts. The Garn-St. Germain conference report reached a contrary conclusion predicated on a misinterpretation of the finality of district court decisions and the constitutional limitations on our power to review those decisions. The district court correctly found that Florida meets the "window period" definition in Garn-St. Germain.
Because we have found that Florida meets the "window period" criteria in Garn-St. Germain, we must decide for the first time whether public policy supports the restrictions on due-on-sale clause enforcement imposed by Lockwood and other decisions. Lockwood balanced the mortgagor-mortgagee equities and found that equity favored the mortgagor where the mortgagee sought to enforce a due-on-sale clause absent an impairment of security. We find the equities and public policy contentions more evenly balanced.
While not controlling in this case, Garn-St. Germain reflects a national policy to protect the financial stability of mortgage lenders and the secondary mortgage market. Interest rate changes in recent years have required lenders to include and enforce due-on-sale clauses in all new mortgages. The supply of mortgage money becomes scarce when lenders must pay market interest rates for short-term deposits but receive below market interest income on long-term mortgages. Also, mortgages without an enforceable due-on-sale clause command a lower price in the secondary mortgage market. These factors combine to send mortgage money out of Florida if due-on-sale clauses may be enforced only where the lender shows an impairment of security. This shortage of mortgage money benefits neither buyers and sellers of Florida real estate nor the Florida economy as a whole. We disapprove Lockwood because its restrictions on due-on-sale clause enforcement enable mortgagors to avoid a reasonable contract provision. We hold that a mortgage lender, whether private or institutional, need not show impairment of security before enforcing a due-on-sale clause.
Accordingly, we answer the certified question in the affirmative. Weiman is approved in part, quashed in part, and remanded for proceedings consistent with this opinion.
It is so ordered.
ADKINS, ALDERMAN and SHAW, JJ., concur.
BOYD, C.J., concurs specially with an opinion.
EHRLICH, J., concurs in result only.
OVERTON, J., dissents.
BOYD, Chief Justice, concurring specially.
I concur with the majority opinion holding that Florida was indeed a "window-period state" under the federal legislation in *685 question because the law of Florida, as expressed in decisions of the district court of appeal, was that enforcement of a due-on-sale clause in a mortgage loan contract depended upon a showing of impairment of security. I concur as well in the Court's present decision to overrule that prior law of Florida on public policy grounds. The public policy grounds relied upon by the Court  the stability of the mortgage market and the continued availability of mortgage credit in Florida  are well and persuasively articulated in the opinion of Justice McDonald.
I only wish to add one further public policy ground supporting our decision, one which in my view is the essential underlying policy ground of all contract law: the policy of giving legally binding effect to the voluntarily undertaken and clearly manifested intentions of the parties to an agreement.
Where one person borrows money from another and pledges property as security in the form of a mortgage, and agrees that the loan will become due in full upon transfer of the property mortgaged, unless the lender should give his consent to the assumption of the loan obligation by the transferee, there is no reason for our courts of law to decline to enforce the agreement as made. The Lockwood decision being disapproved by this Court today had the effect of relieving the borrower from the effect of a contractual provision to which he had freely agreed. In my view, such a decision has the same effect as a state law impairing the obligations of contracts in violation of article I, section 10 of the United States Constitution.
NOTES
[*] In Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the United States Supreme Court held that a 1976 regulation of the Federal Home Loan Bank Board had preempted all state law restrictions on the exercise of due-on-sale clauses in mortgages issued after the effective date of the regulation by federally chartered savings institutions.